CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

June 03, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
　　　DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **TARIK HASAN HUDGINS,** | ) | |
| **Plaintiff,** | ) | **Case No. 7:25-cv-00175** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **DR. PHILLIP SUSSMAN, et al.,** | ) | **Senior United States District Judge** |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Tarik Hasan Hudgins, a state inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983. The case is presently before the court for review under 28 U.S.C. § 1915A(a). For the following reasons, the amended complaint is **DISMISSED** without prejudice.

## I.   Background

According to the amended complaint, Hudgins was transferred to Keen Mountain Correctional Center (KMCC) from Wallens Ridge State Prison on March 1, 2022. Am. Compl., ECF No. 6, at 7. After arriving at KMCC, Hudgins received two knee sleeves to wear for support. Am. Compl. Exs., ECF No. 6-1, at 11. However, he had to wait nearly two months to see an orthopedic specialist for his knee and arm issues, and the specialist "did not order surgery" at the initial visit. Am. Compl. at 8. Instead, the specialist ordered an MRI of Hudgins's right knee, which "was not performed for another two months."[1] Id. at 7. The MRI revealed a subtle tear of the medial meniscus. Id. at 9; ECF No. 6-1 at 14.

---

[1] Hudgins does not identify the orthopedic specialist who initially examined him after he was transferred to KMCC. Medical records submitted in another case indicate that Hudgins was referred to Appalachian Orthopedics on April 15, 2022, and May 24, 2022; that he received a knee injection at the first appointment; and that an MRI of the right knee was recommended after the second appointment. See Hudgins v. Mullins, No. 7:22-cv-00170 (W.D. Va.), ECF No. 122-1 at 8–9.

After reviewing the MRI results, Deborah Ball, a nurse practitioner at KMCC, determined that Hudgins needed to see an "offsite specialist." Am. Compl. at 9. During a follow-up appointment, Nurse Practitioner Ball informed Hudgins that the disc containing the MRI results was "missing" and that he would likely need to undergo another MRI if the disc could not be located. Id. at 10.

On October 14, 2022, the grievance department received a written complaint from Hudgins alleging that the "loss of the MRI CD and associated MRI reports" was "clearly negligence." ECF No. 6-1 at 21. On October 27, 2022, Nurse R. Smith responded that the appointment had been rescheduled and that the disc had been sent with Hudgins's paperwork. Id.

Hudgins subsequently filed a regular grievance alleging that "the loss of the MRI CD and MRI reports is negligence." Id. at 23. On December 12, 2022, the Level I respondent provided the following response:

> In response to your grievance, Medical Manager Mr. Whited has stated the following, "Inmate was positive for COVID-19 and had to reschedule the follow-up appointment. Since then the inmate has been seen on 12-02-22." No violation of policy or procedure noted.

Id. at 25.

Hudgins acknowledges that he underwent surgery on his right knee three days later, on December 15, 2022. Am. Compl. at 10. Hudgins notes, however, that he "only received surgery on his knee" and "not on his left forearm for the permanent knot on his arm under his skin." Id.

An exhibit attached to the complaint indicates that Nurse Practitioner Ball referred Hudgins to Johnston Memorial Hospital for a "knee repair" and that Dr. Phillip Sussman performed a right knee "arthroscopy [with] meniscectomy" on December 15, 2022. ECF No. 6-

1 at 16. Although the procedure required stitches, Dr. Sussman did not order crutches for Hudgins. Am. Compl. at 13. Instead, Dr. Sussman provided the following post-operative instructions: "WBAT [(weight bearing as tolerated)], remove dressing after 48 [hours]," and return for a follow-up appointment in two weeks. ECF No. 6-1 at 16. Dr. Sussman also ordered a prescription pain medication. Id. at 16–17.

Nearly two weeks later, on December 28, 2022, Hudgins submitted an emergency grievance alleging that he had not been given crutches after undergoing surgery and that he was having to "hop & skip" to receive his meals and medications. ECF No. 6-1 at 4. That same day, Nurse C. Smith provided the following response:

> You were evaluated by a provider on 12/22/22, no order for crutches, you are weight bearing as tolerated, no need for crutches.

Id.

Based on the allegations in the amended complaint, Hudgins asserts the following "claims for relief" against Nurse R. Smith, Nurse C. Smith, Dr. Sussman, and Nurse Practitioner Ball:

> The failure of medical secretary Ms. R. Smith, RN to carry out treatment for the plaintiff's arm and knee injuries after transfer to KMCC at a reasonable time to be seen by outside orthopedic specialist constituted deliberate[] indifference and cruel and unusual punishment . . . .
>
> The failure of C. Smith, RN (Nurse) to give Plaintiff crutches after surgery on knee . . . constituted deliberate[] indifference and cruel and unusual punishment . . . .
>
> The failure of Dr. Phillip Sussman, DO at Johnston Memorial Hospital to give an order for crutches to walk on after knee surgery with stitches in plaintiff's right knee constituted deliberate indifference to his serious medical needs and cruel and unusual punishment . . . .

3

> The failure of Ms. D. Ball, NP [to] give an order for crutches after surgery on knee with stitches in right knee constituted deliberate[] indifference and cruel and unusual punishment . . . .

Am. Compl. at 14–16. Hudgins seeks to recover monetary damages from the defendants in their individual and official capacities. Id. at 17–18; see also ECF No. 14 (clarifying that the defendants are sued in their individual and official capacities).

## II.      Standard of Review

The court is required to review a complaint in a civil action in which an inmate seeks redress from an employee or agent of a governmental entity. 28 U.S.C. § 1915A(a). The court must "dismiss a complaint, or any portion of the complaint, if the complaint . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A complaint filed by a pro se litigant must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A complaint filed without counsel "still must contain enough facts to state a claim for relief that is plausible on its face." Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

### III.   Discussion

Hudgins seeks relief under 42 U.S.C. § 1983 for alleged violations of the Eighth Amendment. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

### A.   Claims Against Defendants in Their Official Capacities

As noted above, Hudgins seeks to hold the defendants liable in their official and individual capacities. "Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (internal quotation marks omitted). A suit against a state official in his official capacity is "no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that the Eleventh Amendment "bars suit against state officials in their official capacity for damages under 42 U.S.C. § 1983." Lawson v. Gault, 828 F.3d 239, 278 (4th Cir. 2016) (citing Will, 491 U.S. at 71). Additionally, whereas § 1983 "permits suit against 'every person' who deprives an individual of his or her rights under color of state law, neither States nor state officials acting in their official capacities constitute 'persons' within the meaning of the statute when sued for monetary relief." Fauconier v. Clarke, 966 F.3d 265, 279–80 (4th Cir. 2020). Consequently, Hudgins's claims for damages against the defendants in their official capacities on

behalf of the Commonwealth of Virginia or the Virginia Department of Corrections must be dismissed.[2]

**B.      Claims Against Defendants in Their Individual Capacities**

In order to state a claim against a defendant in their individual or personal capacity under § 1983, a plaintiff "must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (internal quotation marks and alterations omitted). "Liability is thus determined person by person: A plaintiff must show 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" King v. Riley, 76 F.4th 259, 269 (4th Cir. 2023) (quoting Iqbal, 556 U.S. at 676).

Hudgins claims that each of the named defendants violated his rights under the Eighth Amendment. "The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII). "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). An Eighth Amendment violation occurs when a prison official or healthcare provider "demonstrates 'deliberate indifference' to an inmate's serious medical needs." Id.

---

[2] To the extent Dr. Sussman was employed by a private corporation at the time he agreed to treat Hudgins, the amended complaint fails to state a claim against Dr. Sussman in his official capacity. To state a claim against a private corporation that agrees to provide medical services to a state inmate, "a plaintiff must allege a policy or custom that resulted in the alleged constitutional violations at issue." Palakovic v. Wetzel, 854 F.3d 209, 232 (3d Cir. 2017); see also Hendrick v. Wexford Health Sources, Inc., 141 F. Supp. 3d 393, 400–01 (D. Md. 2015) (citing Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999)). Because Hudgins does not allege that an official policy or custom resulted in a deprivation of his constitutional rights, he fails to state a claim against Dr. Sussman in this capacity.

An Eighth Amendment claim of deliberate indifference has two components. Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). The plaintiff must show that he had serious medical needs (the objective component) and that a defendant acted with deliberate indifference to those needs (the subjective component). Hixson v. Moran, 1 F.4th 297, 302 (4th Cir. 2021). A medical need is sufficiently serious for purposes of the objective component "when it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (internal quotation marks omitted).

The subjective component requires an inmate to show that a defendant "subjectively knew of and disregarded an excessive risk to the inmate's health or safety." Hixson, 1 F.4th at 302. "That is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." Jackson, 775 F.3d at 178. To establish an Eighth Amendment violation, "it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Id.

The United States Court of Appeals for the Fourth Circuit has explained that the mere fact that an inmate received "some treatment" for a condition does not necessarily mean that the inmate received "constitutionally adequate treatment." De'Lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013). Nevertheless, an inmate "does not enjoy a constitutional right to the treatment of his or choice," id., and a mere "[d]isagreement[] between an inmate and a physician over the inmate's proper medical care . . . fall[s] short of showing deliberate indifference." Jackson, 775 F.3d at 178 (internal quotation marks omitted). Instead, "the treatment given must be so grossly

7

incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Hixson, 1 F.4th at 303 (internal quotation marks omitted).

It is against this backdrop that the court proceeds to evaluate Hudgins's claims against Nurse R. Smith, Dr. Sussman, Nurse Practitioner Ball, and Nurse C. Smith.

### 1.      Nurse R. Smith

Allen claims that Nurse R. Smith, who he describes as both a registered nurse and a "medical secretary," acted with deliberate indifference by failing to arrange for him to be seen by an "outside orthopedic specialist" for his "arm and knee injuries" at a "reasonable time." Am. Compl. at 14. Elsewhere in the amended complaint, Hudgins alleges that Nurse R. Smith acted with deliberate indifference by failing to "keep track" of the report of the MRI performed on his right knee. Id. at 11.

The non-conclusory factual allegations in the amended complaint are insufficient to state a plausible claim of deliberate indifference against this defendant. While Hudgins contends that he had to wait nearly two months to see an orthopedist after arriving at KMCC, he does not plausibly allege that the delay was attributable to any deliberate action or omission on the part of Nurse R. Smith, and the delay in and of itself is not sufficient to support a finding of deliberate indifference. See Moskos v. Hardee, 24 F.4th 289, 297 (4th Cir. 2022) ("[T]o state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Not all medical delays, of course, will meet this standard. Medical care is often not immediate. Only the most fortunate are able to receive a doctor's appointment at the precise time they want . . . .") (internal quotation marks omitted); Easter v. Powell, 467 F.3d 459 (463 (5th Cir. 2006) ("The mere delay of medical care can also constitute an Eighth Amendment violation but only if there has been deliberate indifference that results in

substantial harm.") (emphasis added) (internal quotation marks omitted); see also Formica v. Aylor, 739 F. App'x 745, 754 (4th Cir. 2018) (noting that the "necessary showing of deliberate indifference can by manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care") (emphasis omitted).

To the extent Hudgins seeks to hold Nurse R. Smith responsible for the loss or misplacement of his MRI results and the impact it may have had on scheduling the surgical procedure on his right knee, the allegations at most support a claim of negligence, not deliberate indifference. See Blank v. Bell, 634 F. App'x 445, 448 (5th Cir. 2016) ("Although the intentional failure to schedule an appointment with a specialist may amount to deliberate indifference when it causes substantial harm, the negligent failure to schedule an appointment does not."); Ervin v. Busby, 992 F.2d 147, 150–51 (8th Cir. 1993) ("We agree with the district court's conclusion that the Crittenden County officials may have been negligent in misplacing Ervin's medicine and delaying a month in getting the prescription refilled. However, negligence is not sufficient to support a § 1983 claim.").

### 2.  Dr. Sussman

Hudgins claims that Dr. Sussman acted with deliberate indifference by failing to order crutches for him to use following the surgical procedure performed on his right knee. This claim is also subject to dismissal for failure to state a claim upon which relief may be granted. Courts have recognized that "decisions such as whether to . . . prescribe the use of crutches are matters of medical judgment," which "are beyond the purview of the Eighth Amendment." Johnson v. Farley, No. 96-4165, 1999 WL 1204552, at *2 (7th Cir. Dec. 13, 1999) (citing Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996)); see also Fields v. Del. Dep't of Corr., 787 F. App'x 796, 799

9

(3d Cir. 2019) (noting that a plaintiff's "contention that the defendants should have provided crutches or an MRI sooner" constituted "'mere disagreement as to the proper medical treatment'") (quoting <u>Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 346 (3d Cir. 1987)); <u>Davis v. Hall</u>, 992 F.2d 151, 153 (8th Cir. 1993) (characterizing the plaintiff's claim of denial of access to crutches as a mere expression of "displeasure with the judgment of the medical and prison personnel involved"). Even assuming that Dr. Sussman was somehow negligent in failing to order crutches, "a showing of mere negligence" does not support a claim of deliberate indifference. <u>Ford v. Hooks</u>, 108 F.4th 224, 230 (4th Cir. 2024); <u>see also</u> <u>Veloz v. New York</u>, 35 F. Supp. 2d 305, 312–13 (S.D.N.Y. 1999) (concluding that a plaintiff's complaints about not being prescribed crutches, a wheelchair, or a cane following an operation on his foot, "at most, allege negligence and are insufficient as a matter of law to state a claim under § 1983").

To the extent Hudgins also notes that he "only received surgery on his knee" and "not on his left forearm," Am. Compl. at 10, he does not allege that Dr. Sussman or any other provider recommended surgery for the knot on his arm. Hudgins's personal belief that he needed surgery is "insufficient to establish a constitutional violation." <u>Hacker v. Wackenhut Corr. Facility</u>, 95 F. App'x 293, 295 (10th Cir. 2004) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 109 (1976) (explaining that the question of whether "additional . . . forms of treatment . . . is indicated is a classic example of a matter for medical judgment" and that the plaintiff's complaint that "more should have been done [for his back injury] by way of diagnosis and treatment" would at most support a claim of medical malpractice)).

### 3.    Nurse Practitioner Ball

Hudgins also fails to state a claim against Nurse Practitioner Ball based on her alleged failure to "give an order for crutches after surgery." Am. Compl. at 16. As noted above, the post-

operative instructions provided by Dr. Sussman, which were initialed by "DB NP-C," made no mention of any need for crutches. ECF No. 6-1 at 16. Instead, Dr. Sussman prescribed medication for pain and noted that Hudgins should bear weight as tolerated. Primary care providers are generally entitled to rely on a specialist's opinions and expertise, see, e.g., Rodgers v. Rankin, 99 F.4th 415, 422 (7th Cir. 2024), and the amended complaint does not contain sufficient factual matter from which the court could reasonably infer that Nurse Practitioner Ball subjectively knew of and disregarded an excessive risk to Hudgins's health or safety.

4.      **Nurse C. Smith**

For similar reasons, the court concludes that Hudgins has failed to state a claim against Nurse C. Smith, who was responsible for responding to the emergency grievance that Hudgins filed on December 28, 2022, regarding the fact that he had not received any crutches after undergoing surgery nearly two weeks earlier. Nurse C. Smith determined that the grievance did not meet the definition of an emergency and noted that Hudgins had been evaluated by a "provider" on December 22, that Hudgins was "weight bearing as tolerated," and that there was no order or documented need for crutches. ECF No. 6-1 at 4. While Hudgins obviously disagrees with the nurse's response to his grievance, such disagreement falls short of showing deliberate indifference. "As a matter of professional conduct, nurses may generally defer to instructions given by physicians." Holloway v. Del. Cnty. Sheriff, 700 F.3d 1063, 1075 (7th Cir. 2012). Although "that deference may not be blind or unthinking, particularly if it is apparent that the physician's [instructions] will likely harm the patient," id. (internal quotation marks omitted), Hudgins has not set forth facts sufficient to show that Nurse C. Smith consciously disregarded an excessive risk to his health or safety.

11

## IV.    Conclusion

For these reasons, the court concludes that Hudgins's amended complaint fails to state a claim upon which relief may be granted under § 1983. Accordingly, the court will dismiss the amended complaint without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).[3] An appropriate order will be entered.

Entered: June 3, 2026

Michael F. Urbanski
U.S. District Judge
2026.06.03 09:36:21
-04'00'

Michael F. Urbanski
Senior United States District Judge

---

[3] To the extent Hudgins intended to assert claims of negligence or medical malpractice under state law, the court declines to exercise supplemental jurisdiction over such claims and will dismiss them without prejudice. See 28 U.S.C. § 1367(c)(3) (permitting a district court to decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction).

12